

FILED & JUDGMENT ENTERED
Steven T. Salata

December 28 2022

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In re: | |
| **BK RACING, LLC,** | Chapter 11 |
| Debtor. | Case No: 18-30241 |
| **MATTHEW W. SMITH,** | |
| **Sole manager for BK Racing, LLC,** | |
| Plaintiff, | Adversary Proceeding No.: 20-3012 |
| v. | |
| **RACE ENGINES PLUS, LLC,** | |
| Defendant. | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER AWARDING
JUDGMENT IN FAVOR OF THE PLAINTIFF**

THIS MATTER came before the Court for trial on October 18, 2022. Andrew T.
Houston, Esq. and Caleb Brown, Esq. appeared on behalf of plaintiff Matthew W. Smith in his
capacity as the sole manager for reorganized BK Racing, LLC ("Plaintiff") and Kenneth B.

Dantinne, Esq. appeared on behalf of defendant Race Engines Plus, LLC ("REP" or the "Defendant").

The Court, having considered the pleadings, the evidentiary record in this case, the Trial Stipulations Order (defined below), matters for which the Court can take judicial notice, the parties' submissions, the exhibits introduced at trial, the testimony of the witnesses from trial, and the arguments of counsel, finds and concludes as follows:

**FINDINGS OF FACT**

*A. Procedural History of the Chapter 11 Case*

1.      On February 15, 2018, BK Racing, LLC ("BK Racing" or the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtor was a North Carolina limited liability company that was formed in December 2011.

3.      From 2012 through 2018, the Debtor owned and operated a NASCAR Cup Series racing team.

4.      On March 9, 2018, creditor Union Bank & Trust filed Union Bank & Trust's Motion to Appoint Chapter 11 Trustee (the "Trustee Motion").

5.      By entry of an order dated March 30, 2018, the Court granted the Trustee Motion and appointed Plaintiff as the chapter 11 trustee for the Debtor's estate.

6.      The Plaintiff operated the Debtor's NASCAR team from March 30, 2018 to August 2018.

7.      REP served as the chair of the Official Committee of Unsecured Creditors in this chapter 11 case.

8.      REP filed one or more proofs of claim and also asserts an administrative expense claim in the bankruptcy case.

9.      Pursuant to the terms of the confirmed plan of liquidation, the Plaintiff was appointed as the sole manager of the reorganized Debtor and tasked with, among other things, investigating and pursuing litigation claims for the benefit of the Debtor's creditors.

**B. *Relevant Procedural Posture of this Adversary Proceeding***

10.     The Plaintiff initiated this action by filing a complaint on February 14, 2020.

11.     In the complaint, the Plaintiff alleged that: (i) on three occasions after the Plaintiff was appointed as the chapter 11 trustee, REP knowingly and intentionally submitted false invoices to the Debtor for tuning second use engines that had, in fact, already been used in two prior races (the "False Invoicing Transactions"), and (ii) REP improperly leased two of the Debtor's engines to another race team for pecuniary gain after the Debtor filed this bankruptcy case (the "Post-Petition Leasing Transactions").

12.     As a result of these challenged transactions, the Plaintiff asserted the following claims for relief: (1) First Claim for Relief—Fraud, (2) Second Claim for Relief—Conversion, (3) Third Claim for Relief—Unfair and Deceptive Trade Practices Pursuant to N.C. Gen. Stat. § 75-1.1 *et seq.*, (4) Fourth Claim for Relief—Stay Violation Pursuant to 11 U.S.C. § 362(k), (5) Fifth Claim for Relief—Avoidance of Unauthorized Post-Petition Transfers Pursuant to 11 U.S.C. § 549, (6) Sixth Claim for Relief—Recovery of Transfers Pursuant to 11 U.S.C. § 550, (7) Seventh Claim for Relief—Claim Block Pursuant to 11 U.S.C. § 502(d), and (8) Eighth Claim for Relief—Claim Objection/Equitable Subordination Pursuant to 11 U.S.C. §§ 502(b) & 510.

13.     The Defendant filed its answer on April 22, 2020.

14.     The parties completed discovery in this case.    In the course of finalizing discovery, the parties entered into multiple factual and streamlining stipulations that were memorialized and approved in this Court's *Order: (A) Resolving Motion to Compel, (B) Approving the Parties Stipulations Regarding a Trial of this Action, (C) Scheduling a Trial on the Merits, and (D) Granting Related Relief* entered on August 29, 2022 (the "Trial Stipulations Order").[1] [Doc. 48].

15.     In pertinent part, the parties agreed: (i) to conduct a one day bench trial on October 18, 2022 (Trial Stipulations Order, p. 2, ¶ C), (ii) that the bench trial would be limited to trying Claims 1-5 in the Complaint related to: (a) the "False Invoicing Transactions," and (b) the "Post-Petition Leasing Transactions" (Trial Stipulations Order, p. 6, ¶ 17), and (iii) to resolve Claims 6-8 in the Complaint by stipulation depending on how the Court ruled on Claims 1-5 at trial (Trial Stipulations Order, p. 6, ¶¶ 16 & 19-20).

16.     The Court conducted a bench trial on October 18, 2022.

## C.  The False Invoicing Transactions

### Background

17.     REP is a North Carolina limited liability company with its principal place of business located in Cabarrus County, North Carolina.

18.     REP operates an engine building and servicing business that provides services to race teams on the NASCAR Monster Energy Cup Series.

19.     Prior to the petition date, REP performed tuning and related services on the Debtor's engines that it used in connection with the operation of its race team.

---

[1] The Court incorporates by reference the terms of the Trial Stipulations Order as if set forth fully herein, and it adopts the parties' stipulations as additional findings of fact and conclusions of law, as applicable, to the extent they are not expressly set forth in this order.

20.    REP continued to provide tuning and related services to the Debtor after the bankruptcy case was filed and after the Plaintiff was appointed as the chapter 11 trustee.

21.    As of the petition date, the Debtor owned engine numbers 1113, 1115, 1125 and 1127.

22.    For the 2018 race season, NASCAR enacted multiple rule changes to reduce expenses for teams and to level the playing field for all cup series events.

23.    In particular, NASCAR mandated that all full-time teams were required to use 13 of their engines for two full race weekends during the 2018 season.

24.    Consequently, the applicable engine would be run for a first time as a "fresh" (or rebuilt) engine at a given race and then it would be sealed after the first race weekend, so that only minor services could be performed on the engine for the second race/race weekend.

25.    The purpose of this rule was to keep costs under control for all of the cup series teams.

26.    As a result of this rule change for 2018, 13 of the engines that REP was servicing for the Debtor were being designed and built out to last for two races.

### The Sonoma California Race

27.    On June 24, 2018, the Debtor ran a sealed engine race at Sonoma Raceway in Sonoma, California.

28.    Prior to the Sonoma race, REP submitted invoice number 2018692 to the Debtor on or about June 18, 2018 ("Invoice 2018692").

29.    Invoice 2018692 stated that it was for a "2nd time use" for the engine that was being provided by REP to the Debtor for the Sonoma race.

30.     The engine that was provided by REP to the Debtor for the Sonoma race was engine number 1125.

31.     Engine 1125 was run by BK Racing in the cup series race at Sonoma, California on June 24, 2018.

32.     Invoice 2018692 was false because engine 1125 was already run at two separate races.

33.     Specifically, engine 1125 was previously run by: (a) BK Racing in the cup series race at Phoenix, Arizona on March 11, 2018, and (ii) BK Racing in the cup series race at Bristol, Tennessee on April 15, 2018.

34.     Misrepresenting the use, quality, and wear and tear on engine 1125 at the Sonoma race was a material misrepresentation of fact.

35.     The misrepresentations of fact contained in Invoice 2018692 were reasonably calculated to deceive the Debtor.

36.     REP submitted Invoice 2018692 with the intent to deceive the Debtor.

37.     The Debtor paid the sum of $28,000.00 to REP on account of Invoice 2018692.

38.     The Debtor was not aware that Invoice 2018692 contained false statements of material fact when it paid $28,000.00 to REP.

39.     The Debtor reasonably relied on the accuracy of Invoice 2018692 when it paid $28,000.00 to REP.

### *The Kentucky Speedway Race*

40.     On July 14, 2018, the Debtor ran a sealed engine race at Kentucky Speedway in Sparta, Kentucky.

41.     Prior to the Kentucky race, REP submitted invoice number 2018718 to the Debtor on or about July 9, 2018 ("Invoice 2018718").

42.     Invoice 2018718 stated that it was for a "2nd time use" for the engine that was being provided by REP to the Debtor for the Kentucky race.

43.     The engine that was provided by REP to the Debtor for the Kentucky race was engine number 1127.

44.     Engine 1127 was run by BK Racing in the cup series race at Kentucky Speedway on July 14, 2018.

45.     Invoice 2018718 was false because engine 1127 was already run at two separate races.

46.     Specifically, engine 1127 was previously run by: (i) BK Racing in the cup series race at Richmond, Virginia on April 21, 2018, and (ii) BK Racing in the cup series race at Kansas on May 12, 2018.

47.     Misrepresenting the use, quality, and wear and tear on engine 1127 at the Kentucky race was a material misrepresentation of fact.

48.     The misrepresentations of fact contained in Invoice 2018718 were reasonably calculated to deceive the Debtor.

49.     REP submitted Invoice 2018718 with the intent to deceive the Debtor.

50.     The Debtor paid the sum of $28,000.00 to REP on account of Invoice 2018718.

51.     The Debtor was not aware that Invoice 2018718 contained false statements of material fact when it paid $28,000.00 to REP.

52.     The Debtor reasonably relied on the accuracy of Invoice 2018718 when it paid $28,000.00 to REP.

### *The New Hampshire Race*

53.    On July 22, 2018, the Debtor ran a sealed engine race at the New Hampshire Motor Speedway in Loudon, New Hampshire.

54.    Prior to the New Hampshire race, REP submitted invoice number 2018721 to the Debtor on or about July 16, 2018 ("Invoice 2018721," and together with Invoice 2018962 and Invoice 2018718, the "Invoices").

55.    Invoice 2018721 stated that it was for a "2nd time use" for the engine that was being provided by REP to the Debtor for the New Hampshire race.

56.    The engine that was provided by REP to the Debtor for the New Hampshire race was engine number 1115.

57.    Engine 1115 was run by BK Racing in the cup series race at New Hampshire on July 22, 2018.

58.    Invoice 2018721 was false because engine 1115 was already run at two separate races.

59.    Specifically, engine 1115 was previously run by: (i) BK Racing in the cup series race at Atlanta, Georgia on February 25, 2018, and (ii) the Carl Long team/MBM Motorsports (#66) (the "Carl Long Team") in the cup series race at Kansas on May 12, 2018.

60.    Misrepresenting the use, quality, and wear and tear on engine 1115 at the New Hampshire race was a material misrepresentation of fact.

61.    The misrepresentations of fact contained in Invoice 2018721 were reasonably calculated to deceive the Debtor.

62.    REP submitted Invoice 2018721 with the intent to deceive the Debtor.

63.    The Debtor paid the sum of $28,000.00 to REP on account of Invoice 2018721.

64.     The Debtor was not aware that Invoice 2018721 contained false statements of material fact when it paid $28,000.00 to REP.

65.     The Debtor reasonably relied on the accuracy of Invoice 2018721 when it paid $28,000.00 to REP.

**D.      *The Post-Petition Leasing Transactions***

### *The Bristol Tennessee Lease of Engine 1113 to the Carl Long Team*

66.     The Debtor's bankruptcy estate owned engine 1113.

67.     Nevertheless, REP leased engine 1113 to the Carl Long Team for use in the cup series race at Bristol, Tennessee on April 15, 2018.

68.     The Carl Long Team ran engine 1113 at the Bristol race.

69.     REP was paid $17,120.00 by the Carl Long Team in exchange for leasing engine 1113 for the Bristol race.

70.     REP knew that the Debtor's bankruptcy case was pending when it leased engine 1113 to the Carl Long Team for the Bristol race.

71.     REP did not file a motion for relief from the automatic stay or otherwise seek or obtain this Court's approval of its lease of engine 1113 to the Carl Long Team for the Bristol race.

72.     REP has not remitted the proceeds of its lease of engine 1113 to the Plaintiff.

### *The Kansas Speedway Lease of Engine 1115 to the Carl Long Team*

73.     The Debtor's bankruptcy estate owned engine 1115.

74.     Nevertheless, REP leased engine 1115 to the Carl Long Team for use in the cup series race at the Kansas Speedway on May 12, 2018.

75.     The Carl Long Team ran engine 1115 at the Kansas race.

76.     REP was paid $17,120.00 by the Carl Long Team in exchange for leasing engine 1115 for the Kansas race.

77.     REP knew that the Debtor's bankruptcy case was pending when it leased engine 1115 to the Carl Long Team for the Kansas race.

78.     REP did not file a motion for relief from the automatic stay or otherwise seek or obtain this Court's approval of its lease of engine 1115 to the Carl Long Team for the Kansas race.

79.     REP has not remitted the proceeds of its lease of engine 1115 to the Plaintiff.

## CONCLUSIONS OF LAW

### *Jurisdiction and Venue*

1.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2.     This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.     Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1409.

### *Plaintiff's First Claim for Relief—Common law fraud*

4.     The False Invoicing Transactions are common law fraud under North Carolina law.

5.     To establish his fraud claim, the Plaintiff must establish the following elements: "(1) a false representation or concealment of a material fact, (2) that is reasonably calculated to deceive, (3) is made with intent to deceive, (4) and does in fact deceive, (5) resulting in damage to the injured party." *Fairchild v. Fairchild*, No. 3:18CV623-GCM, 2020 U.S. Dist. LEXIS 165995, at *5 (W.D.N.C. Sep. 10, 2020) (citing *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E.2d 494, 500 (N.C. 1974)).

6.      The Plaintiff satisfied each element of his fraud claim because: (i) the Invoices submitted by REP to the Debtor contained false representations of material fact, (ii) the false statements were reasonably calculated to deceive the Debtor, (iii) the false statements were intended to deceive the Debtor, (iv) REP's false statements did, in fact, deceive the Debtor, (v) the Debtor relied in good faith on the false statements made by REP, (vi) the Debtor reasonably relied on the false statements made by REP, and (vii) the Debtor, and its estate, was damaged in the amount of $84,000.00.

7.      Accordingly, the Court will enter a judgment in favor of the Plaintiff on his first claim for relief.

### *Plaintiff's Third Claim for Relief—Unfair and Deceptive Trade Practices*

8.      The False Invoicing Transactions are violations of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq.* (the "Act").

9.      To prove his claim for violating the Act, the Plaintiff must show the following: "(1) defendant[] committed an unfair or deceptive act or practice, (2) in or affecting commerce and (3) plaintiff was injured as a result." *Thompson v. Bass*, 261 N.C. App. 285, 292 (2018) (quoting *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 439 (2005)).

10.     A fraud committed in or affecting commerce is an unfair and deceptive trade practice that violates the Act. *Bhatti v. Buckland*, 328 N.C. 240, 243 (1991) ("The case law applying Chapter 75 holds that a plaintiff who proves fraud thereby establishes that unfair or deceptive acts have occurred.").

11.     The Plaintiff satisfied each element of his claim for violating the Act because: (i) the False Invoicing Transactions constituted fraud, (ii) the False Invoicing Transactions were

unfair or deceptive acts or business practices, (iii) the challenged transactions were in or affecting commerce, and (iv) the Debtor, and its estate, was injured by REP's acts in the amount of $84,000.00.

### *The Court awards the Plaintiff treble damages based on REP's violations of the Act*

12.    Where the Court determines that a violation of the Act has occurred "judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict." N.C. Gen. Stat. §75-16.

13.    Where an unfair and deceptive trade practice claim is found, an award of treble damages is mandatory. *Bhatti,* 328 N.C. at 243 ("If a violation of Chapter 75 is found, treble damages must be awarded.").

14.    Based on the foregoing, the damages sustained by the Plaintiff as a result of REP's violations of the Act must be trebled, and the Court awards damages in the amount of $252,000.00 based on REP's violations of the Act.

### *The Court awards the Plaintiff his attorneys' fees based on REP's violations of the Act*

15.    The Court has the discretion to award attorneys' fees to the prevailing party pursuant to Section 75-16.1 of the Act upon a finding that "[t]he party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit." N.C. Gen. Stat. § 75-16.1(1).

16.    When the conduct found to constitute an unfair and deceptive trade practice is fraud, a court may award attorneys' fees because fraud is "a willful and intentional act. . . ." *See Inv'rs Title Ins. Co. v. Herzig*, 101 N.C. App. 127, 132 (1990).

17.    The Plaintiff is the prevailing party in this action and the Court determines in its discretion that it should award the Plaintiff the attorneys' fees he incurred in bringing this action.

18.     REP willfully engaged in the False Invoicing Transactions.

19.     There was an unwarranted refusal by REP to fully resolve the matter that was the basis of the suit.

20.     Accordingly, the Court will enter a judgment in favor of the Plaintiff on his third claim for relief for damages and attorneys' fees.

### *Plaintiff's Fourth Claim for Relief—Stay Violation Pursuant to 11 U.S.C. §362(k)*

21.     The Post-Petition Leasing Transactions are violations of the automatic stay provisions of 11 U.S.C. §362.

22.     The automatic stay prohibits "any act . . . to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

23.     Under Section 541 of the Bankruptcy Code, property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

24.     Property of the estate also includes the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate." *Id*. at § 541(a)(6).

25.     The remedy for violating the automatic stay is set forth in section 362(k)(1), which provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and . . . may recover punitive damages." 11 U.S.C. §362(k)(1).

26.     To recover under Section 362(k), the Plaintiff must show that:

> [the Debtor] filed a bankruptcy petition; that it was an individual protected by the automatic stay provision; that the creditor received notice of the petition; that the creditor's actions were in willful violation of the automatic stay; and that the debtor suffered damages.

*Houck v. Substitute Tr. Serv. (In re Houck)*, 597 B.R. 820, 831 (Bankr. W.D.N.C. 2019) (Beyer, J.).

27.    The Plaintiff established each element of his stay violation claim because: (i) the Debtor filed its bankruptcy petition on February 15, 2018, (ii) the Debtor and its assets were protected by the automatic stay, (iii) engines 1113 and 1115 and the proceeds from the leases of those engines to the Carl Long Team totaling $34,240.00 are property of the Debtor's bankruptcy estate, (iv) REP received notice of the Debtor's bankruptcy petition, (v) REP willfully exercised control over the Debtor's engines by leasing them to the Carl Long Team after the petition date, (vi) REP willfully exercised control over the proceeds from its leases of the Debtor's engines by collecting and retaining the proceeds, and (vii) the Debtor was damaged by being deprived of the proceeds of the Debtor's property in the amount of $34,240.00.

28.    Pursuant to 11 U.S.C. § 362(k), the Plaintiff is entitled to an award of attorneys' fees and costs based on REP's violations of the automatic stay.

29.    Accordingly, the Court will enter a judgment in favor of the Plaintiff on his fourth claim for relief for damages and attorneys' fees.

### *Plaintiff's Eighth Claim for Relief—Claim Objection/Equitable Subordination*

30.    All claims asserted by REP in this bankruptcy case must be equitably subordinated based on the parties' stipulations and the terms of the Trial Stipulations Order.

31.    Stipulation 21 of the Trial Stipulations Order provides:

> [I]f the Court rules for the Plaintiff on any of his first five claims, then all claims asserted by REP in this bankruptcy case shall be subordinated to the payment in full of general unsecured creditors classified in Class 4 of the Plan (Doc 362, pp. 15-16).  If the Court does not rule for the Plaintiff on any of his first five claims, then REP's claims shall be allowed in the stipulated amounts and treated as an allowed pre-confirmation administrative expense claim in the amount of $10,000.00 and a general unsecured claim in the amount of $2,355,561.34.

Trial Stipulations Order, p. 6, Stipulation 21.

32.     As discussed above, the Court ruled in favor of the Plaintiff on his first, third and fourth claims for relief.

33.     Accordingly, the Court will enter a judgment on Plaintiff's eighth claim for relief subordinating all claims asserted by REP in the bankruptcy case to all other claims of general unsecured creditors.

**Based upon the foregoing, IT IS ORDERED, ADJUDGED and DECREED that:**

A.     The Court will enter a separate judgment on the docket consistent with the terms of this order in favor of the Plaintiff and against the Defendant on the Plaintiff's first, third, fourth and eighth claims for relief in the Complaint.

B.     The Defendant is taxed with the Plaintiff's costs and attorneys' fees incurred in bringing this action.  To that end, Plaintiff shall file, within fourteen (14) days of the entry of this order, an affidavit containing an itemization of the costs and attorneys' fees incurred in bringing this action.  The Defendant shall file any objections thereto within fourteen (14) days thereafter.

C.     The findings and conclusions set forth in this order are the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, and *vice versa*, they are adopted as such.

D.     The Court shall retain jurisdiction over any and all issues arising from or related to the implementation, interpretation, and enforcement of this order.

| This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of this Order. | United States Bankruptcy Court |
| --- | --- |